DANIEL W. COXE v. GEORGE W. HALSTED and others.

On an application, by petition, verified by the affidavit of the party, to set aside a sale, the material facts alleged in the petition must be proven. The affidavit of the party, except as to facts peculiarly within his own knowledge, must be supported by other evidence.

It is not necessary that advertisements of the sale of real estate by a sheriff or a master in chancery, should be signed by the officer with his own proper signature. Whether the officer's name is signed to the advertisement by himself, or printed, or signed by another, is immaterial. In either case it is a virtual signing by the officer.

Where a sale by a sheriff or master is adjourned, no publication of the adjournment is necessary.

Where a sale is advertised for a specified day *between the hours of twelve and five o'clock in the afternoon,* and the property is sold in pursuance of such advertisement, the sale will not be set aside, although there is a propriety and convenience in specifying a particular hour between twelve and five o'clock for the sale.

Nor will a sale by an officer be set aside because the terms of sale are unusually strict or severe, if the circumstances of the case call for rigid measures, and no design is manifested to oppress or injure the defendants.

Where a tract of land is divided into distinct parcels, it must be sold in that way.

On the 11th of April, 1840, the defendants filed their petition for relief against a sale made by a master in chancery, by virtue of an execution issued out of this court, upon a decree for the foreclosure of a mortgage and sale of the mortgaged premises. All the defendants in the original cause, consisting of the mortgagor, and of subsequent incumbrancers and purchasers of parts of the premises, joined in the petition, which was verified by the affidavit of one of the petitioners. On filing the petition an order of the court was made requiring the complainant to show cause on the 25th of April, instant, before the chancellor at Newark, why the said sale should not be set aside and a new sale ordered, and that in the mean time the master should desist from executing a deed to any of the purchasers at said sale. Affidavits were taken on the part of the complainant upon notice, to be

[Coxe v. Halsted et al.]

used on the argument. No affidavits were taken on the part of the defendants. Upon the coming on of the hearing, the counsel of the defendants read the petition, without offering any evidence *aliunde* of the matters therein alleged.

*H. W. Green,* for complainant, declined offering any evidence, and insisted that the facts alleged in the petition were unsupported by evidence, and that the application of the defendants must be denied.

*W. Halsted* and *I. H. Williamson,* for defendants, contra, insisted that it was not necessary to offer further proof in support of the application ; that the petition verified by affidavit was prima facie evidence of all the facts contained in it, and would be taken as true until overcome by proof on the part of the complainant.

BY THE CHANCELLOR. The defendants seek relief against a sale made under the process of the court, upon the ground that the sale was irregular and illegal. The allegation must be sustained by evidence. The petition, verified by the affidavit of the party, is a foundation for the rule to show cause, and will of course be read upon the argument of the rule ; but it is not competent evidence, unsupported by other proof, of the charges therein contained, except as to matters peculiarly and exclusively within the defendant's own knowledge. The petitioners are the actors upon this motion. They are bound to make out their case as stated, and cannot call upon the complainant to support the sale, until they have offered some evidence to impeach it. Upon the case as it now stands, I cannot grant the motion. As the defendants' solicitor has acted under a different impression as to the rule of practice, I am willing to grant time, if desired, for the defendants to take affidavits in support of the motion.

Upon the application of the defendants' counsel the hearing was thereupon postponed until the seventh of May, with leave

[Coxe v. Halsted et al.]

to both parties to take affidavits to be used upon the hearing. On the seventh of May, 1840, the cause came on for hearing, upon affidavits taken by both parties.

It appeared by the petition and affidavits, that the mortgaged premises consisted originally of a farm of about one hundred and thirty-eight acres, situate in the township of Nottingham. That W. H., one of the petitioners, was made a defendant in the bill to foreclose, because he held a subsequent mortgage for one thousand dollars upon a part of the premises, consisting of about twenty-three acres. That previous to the filing of the bill of complaint, a company was formed for the purpose of improving the mortgaged premises, and incorporated by the legislature of New-Jersey, under the name of the Nottingham manufacturing company, who had purchased the mortgaged premises for sixty thousand dollars, payable in the stock of the company. That the said company had excavated and constructed, upon the twenty-three acre lot mortgaged to the said W. H., a basin two hundred and thirty feet long by one hundred and thirty feet wide, and made other expensive and valuable improvements on said lot. That the said company had agreed to sell a lot fifty feet front by one hundred feet deep, a part of the said twenty-three acre lot, to J. W. for six hundred dollars, who had taken possession of said lot and built a lime-kiln thereon. That the said company had also agreed to sell a lot seventy-five feet front by one hundred feet deep, another part of the said twenty-three acre lot, to W. H., who had possession of said lot, and constructed a dry dock and erected a store-house and hay-scales thereon at great expense. That all the said improvements were made with the knowledge of the complainant, and without having been forbidden by him. Twenty days previous to the sale a notice was served upon the master, requesting him to sell the mortgaged premises in nine different lots, five of which were parcels of the twenty-three acre lot. The premises were sold in the manner requested by the defendants, excepting the twenty-three acre lot, which was all sold in one parcel. The premises were sold without objection on the part of the defendants, excepting the twenty-three

41

[Coxe v. Halsted et al.]

acre lot, and when that was offered the defendants forbid the sale. The whole of the twenty-three acre lot, with the improvements, was sold to the complainant for five thousand dollars, he being the only bidder. By the terms of the sale, each purchaser was required, within half an hour after the premises were struck off to him, to pay one fourth of the purchase money in cash, or by a check on one of the Trenton banks marked *good*, and the residue, together with the cost of writing the deed, on the 13th of April then next, when the deed would be delivered. Each purchaser was also required by the conditions to bind himself in writing, at the time of making the first payment, to forfeit the same, if he failed in all things to comply with the conditions of sale. It appeared by the evidence, that part of the twenty-three acre lot had been enclosed in separate parcels, and was occupied by different tenants as farm land; that roads had been opened and improvements made on other parts of it, which however lay in common unfenced, and the bounds of the different lots which had been sold not defined by any visible bounds. The witnesses on the part of the defendants testified that the property was sacrificed at the sale, in consequence of the terms of the sale being unusually severe, and of the twenty-three acre lot having been sold in mass; and that if the terms of sale had been usual, or if the twenty-three acre lot had been sold in parcels, as requested, it would have brought more than enough to have paid the whole mortgage debt. Witnesses on the part of the complainant testified that the property sold for its fair value. The reasons stated in the petition, and relied upon, on the argument, for setting aside the sale, appear in the opinion of the chancellor.

*W. Halsted* and *I. H. Williamson*, for defendants, in support of the motion, cited *Elmer's Digest*, 487, *pl.* 9; *Ibid* 491, *pl.* 26.; *Ibid* 488, *pl.* 11; *Ryerson* v. *Nicholson*, 2 *Yeates*, 517; *Mohawk Bank* v. *Atwater*, 2 *Paige*, 64; *Woods* v. *Monell*, 1 *J. C. R.* 502; *Rowley* v. *Browne*, 1 *Binney*, 61; *Jackson* v. *Roosevelt*, 13 *John. R.* 102; *Jackson* v. *Newton*, 18 *John.*

[Coxe v. Halsted et al.]

*R.* 355; 7 *Gill and J.* 494—512; *Merwin et al.* v. *Smith et al., ante,* 196.

*H. W. Green,* contra.

THE CHANCELLOR. All the defendants who have any direct interest in the question, have united in a petition that the sale made by the master in this case may be set aside. The sale was made under a fi. fa. issued on the 9th of August, 1839, returnable to the term of October thereafter. The amount to be raised by the execution was large, being about sixteen thousand dollars, and the property to be sold consisted of distinct parcels. The master has made two sales on this execution, the first on the 26th of November last, and the second on the 30th and 31st of March last. At the first sale the greater part of the property was purchased by the defendants, who failed to comply with the terms of the sale, and a resale was therefore rendered necessary. It is the second sale which is now attempted to be set aside; and that I may be the better understood, I shall consider the several reasons assigned in the order in which they were presented.

1. That the advertisements of the time and place of sale were not signed by the master with his own proper hand. They were printed notices, containing a description of the property, and the name of the master was printed at the bottom instead of being written by himself. At this day to sustain an objection of this kind would be too strict a construction of the act, and create much confusion in the judicial sales of the state. The practice has been different in different counties, but it is quite probable that as many advertisements are put up with the name of the officer either printed or signed by another in his behalf, as there are of those actually signed by himself. The advertisements must be signed by the master or sheriff, so that the public may understand that they are made by due authority, but whether the hand-writing of the officer is placed to the paper, or the same be done by his authority and direction, either by printing or by the hand-writing of another, is not material. In either case it is

virtually a signing by the officer. If disposed to look critically at the words of the statute, it would be found that the section of the act directing a sale, by a master or sheriff, of mortgaged premises, on executions out of this court, does not use the same language with that which directs the course of proceeding on executions from the supreme court. That act provides, that the sheriff shall give notice by advertisements "signed by himself." The act regulating sales on mortgaged premises, uses this language:— "The sheriff, &c. shall give notice by advertisements of the time and place of sale, and proceed in all other respects in the same manner as in case of a writ of fieri facias issued out of the supreme court against real estate." The words "signed by himself," are omitted, and certainly leave the act on this point of very doubtful construction.

2. The master adjourned the sale from the 2d to the 30th of March, without publishing such adjournment in the newspaper. However expedient a requirement of this kind would be, it is a sufficient answer, that the law makes no provision on the subject. The publication required by the act only refers to the time and place first appointed for the sale, and not to the adjourned day. That such is its meaning is obvious from the publication being required for four weeks successively prior to the time of sale, and yet an adjournment may be made by the officer for a week or ten days, or for any other time not exceeding one month. The master, however, it seems, did direct advertisements of the adjournment to be put up in three public places in the vicinity of the land. This was not required by law, but it evinced a commendable disposition to give publicity to the sale.

3. The master advertised the sale for Monday the 2d of March, between the hours of twelve and five o'clock in the afternoon, and not for a precise time within those hours. I would advise every officer to name an hour between twelve and five at which the sale will commence. There is a propriety and convenience to the parties and the public in such a course, which should always be considered, but I do not think it essential to the validity of the sale. Advertisements for sales are generally made between the

[Coxe v. Halsted et al.]

hours of twelve and five, without naming any particular hour, and in the absence of any proof of fraud or unfair practice, the sale is good.

4. That the public places at which the advertisements were put up were not sufficiently scattered, but were too near each other. The land to be sold was in Nottingham township. Two of the notices were put up in Nottingham, and three in the township of Trenton. The places appear to have been well selected to give publicity to the sale, were in compliance with the law, and there is no foundation for complaint on this point.

5. The terms of sale are complained of as being unusual, severe, and destructive to the defendants' rights. This is an important inquiry, and should be well considered. These conditions were, that the purchaser should within half an hour pay one fourth of the purchase-money in cash, or by a check marked *good* by one of the Trenton banks; the residue of the money to be paid at the delivery of the deed on the 13th of April then next. In case of non-compliance with the conditions, the purchaser to forfeit the first payment and to make good all damages on a re-sale. These are certainly strict terms, but was there nothing in the case calling for rigid measures? There had been a previous sale made on this execution. The greater part of the purchasers were the defendants themselves, none of whom had complied with the terms of the sale, or offered any excuse for not doing so. The terms of that sale required no payment to be made at the time of sale, but at the giving of the deed, some fifteen days thereafter. The defendants, who were the purchasers, thus failing to take their deeds or pay any money at the time fixed for that purpose, the whole proceeding was of no avail, and the complainant was obliged to go over the same process of advertising for two months again, and be thus further postponed in the payment of his debt. When the master came to fix his terms for the second sale he saw the necessity of adopting a course that would prevent another failure, and it was for that reason alone, as the whole case fully shows, and from no desire to oppress or injure the defendants, that he required the payment in cash at

[Coxe v. Halsted et al.]

the time of the sale of one fourth of the purchase money. Under the circumstances, I think he was justifiable in so doing. So far from any disposition being manifested by the master or by the complainant to be oppressive in their course, the whole evidence would lead me to think directly the reverse. This execution was issued on the 9th of August. The property was advertised first for the 12th of October. On that day it was adjourned, at the request of the defendants, to the 12th of November; and on that day it was again further adjourned, on the like request, to the 26th of the same month, the day of the first sale. Upon default being made by the purchasers to comply with the terms of sale, the property was advertised by the master again for the 2d of March, and then again, at the instance of the defendants, postponed until the 30th of the same month, on which day and the day after the sale took place. Between six and seven months thus passed after the execution was placed in the master's hands before the final sale was made, and every adjournment and default made by the defendants. This does not look like a disposition to oppress the defendants, or to enable the complainant to become the owner of the property. I have no such impression. The complainant wanted his money, and took such steps as he had a legal right to do to procure payment. At the first sale, as the property in the different parcels brought sufficient to pay his debt, he let others become the purchasers; and it is manifest that he became the purchaser at the second sale for the only reason that others would not bid enough to pay his debt, and he thought it more for his interest to buy it in himself than to meet the loss. The master, who is examined by the defendants, says, that in settling the conditions of the sale, he was not influenced by the wishes or views of the complainant. He seems to have acted with a correct estimate of the position he occupied as a public officer, bound to do that which under all the circumstances was right in itself, without following the dictation or control of any person. At first he designed to require a payment in cash of one third of the purchase money, but changed it at the suggestion of the defendants to one fourth.

[Coxe v. Halsted et al.]

6. That the lot of twenty-three acres should have been subdivided and sold in parcels. The general rule is well settled, that where a tract of land is divided into distinct parcels, it must be sold in that way. *Woods* v. *Monell*, 1 *John. Ch.* 505 ; *Mohawk Bank* v. *Atwater*, 2 *Paige's Ch.* 61. See also the case of *Mervin and others* v. *Smith and others*, in this court. Does this case come within that rule? This is the important inquiry. After a careful examination of the evidence, and with an earnest desire to protect the defendants from any abuse of their rights, I have come to the conclusion that I cannot disturb this sale upon this ground. There are several considerations which forbid it.

1. The land is not subdivided into distinct parcels so as to free the complainant from embarrassment in attempting to sell it in lots. This twenty-three acre lot was purchased a few years since when property brought a high price, of the complainant, it being an open field in the ordinary situation of farm lands. The defendants intended to turn it into building lots, and with that view laid streets across it in different directions and made some improvements upon part of it, by building a basin, store-house and lime-kiln. These streets, however, it seems from the evidence, are not laid out according to law, nor in many instances are they even defined by fences. Much of the land lies in common. It is, in fact, one among many of those unfortunate cases in which lands lying in the neighborhood of towns and cities have been set apart on paper for extensive improvements, but which have failed from the embarrassments of the times, and that too, with great loss to the purchasers. To oblige a master or sheriff to be bound by such subdivisions of property, would be attended with great uncertainty, and be a perversion of the spirit and intention of the rule.

2. The decree and execution in this case fixed the order in which the property should be sold, and the sale has been in conformity with them. There was great care taken at that time to secure the rights of all parties, and yet this question of selling this lot in parcels was never agitated.

3. At the first sale of this property, the twenty-three acres were

[Coxe v. Halsted et al.]

sold in one parcel without objection, and purchased by one of the defendants, who failed to comply with the terms, and now upon this resale for the first time is this difficulty interposed. Had it been considered important to have the lot subdivided, it is somewhat singular that it was not suggested at an earlier day, and particularly before the first sale was made.

4. The great reason which would have induced me to direct a resale of this lot (had I found that course consistent with those principles which must govern the case) would have been, that W. H., one of the defendants, had placed improvements on a part of this lot. But the master testifies distinctly that Mr. H. acceded to the selling of the property in the way in which it was sold, and to the terms of sale. This consent must take away, therefore, any complaint from that quarter.

5. The act which authorizes a defendant to elect what part of his lands shall be sold by the sheriff on execution, by serving a notice on him twenty days previous to the sale, does not apply to this case. That act is confined to cases where a part only of the lands are necessary to be sold to satisfy the execution. Here the whole was decreed to be sold, and that too upon a report of the master that it was necessary; and the result has shown that all the property was not sufficient to satisfy the complainant's debt. Acting within the spirit of that act, however, it was right, and the master accordingly did follow the written request of the defendants as far as he found it safe to do so.

As I have not been able to satisfy myself of the propriety of interfering with this sale upon any of the grounds taken, the rule to show cause must be discharged, and the master must proceed in executing the deeds under the sale. As some questions have been presented which were reasonable and proper for the defendants to have settled, I shall make the order without costs.

Order accordingly.